By the Court.—Hasten, J.
The counsel for the defendant contends:
First. That this case falls within and is governed by the provisions of chapter 345 of the Latos of I860.*
Second. That the lease, being of certain rooms, parcel of a building, was terminated by the fire.
I think the act of 1860 embraces' those cases only in which the lessee, by the law as it stood at the time of its enactment, would continue liable upon his agreement to pay rent, notwithstanding the fortuitous injury or destruction of buildings embraced within the demise. The act was passed for the benefit of lessees, and not for the benefit of lessors. It confers upon lessees a right of election, in the cases within it, to terminate the lease by quitting and surrendering up the possession of the demised premises. It does not affect the statute of frauds. An agreement void under the statute of frauds at the time of the passage of the act of 1860 is void now. And any matter which then would, terminate a lease will do "so still.
It has always been the law of England and of this State, prior to the act of 1860, that upon a lease of lands for a term of years, with an express agreement to paya certain yearly rent, the rent is payable by the lessee to the end of his term, though the property be destroyed by inevitable "accident. I do not believe a case can be found to the contrary.
The principle is thus stated in Paradine v. Jane (Aleyn, 26), decided in 1648 : ‘‘When a party by his own contract creates a duty or charge upon himself, he *32 is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract” (3 Kent Com., 465.
It is established in this State that a lease of certain apartments in a building, not comprising the whole building, is terminated by the destruction of the building by casualty, and the lessee discharged from his express contract to pay the rent (Graves v. Berdan, 26 N. Y., 498).
Upon what is this distinction made % In delivering the opinion of the supreme court in Graves ». Berdan, after stating that a demise of a room in a building is not a demise of the soil, or land itself, and after stating the rule of law as I have above stated it, Emott, J., said : “But when the estate is gone, and the thing demised no longer exists, a different principle applies. The peculiar character of the payment which the defendant undertakes to make in the present and similar cases, occasions a distinction between these and ordinary contracts. This is a covenant to pay rent, which is defined to be a certain profit issuing yearly out of lands and tenements corporeal in retribution for them. When, therefore, the estate out of which the rent issued is gone, and the tenement has absolutely ceased to exist, the rent must terminate (29 Barb., 100).
Weight, J., when the case was before the court of appeals, reviewed this reasoning of Emott, J., and dissented from it.
The learned judge who delivered the prevailing opinion in the court of appeals in the case said: “At common law, where the interest of the lessee in a part of the demised premises was destroyed by the act of God, so that it was incapable of any beneficial enjoyment, the rent might be apportioned. In Bollé s Abridgment, 236, it is said that if the sea break in and overflow a part of the demised premises, the rent shall be apportioned-; for though the soil remains to the tenant, yet, as the sea is open to every one, he has no exclusive right *33 to fish there.....The effect of the destruction of the building in such a case” (demise of rooms in a building) is analogous to the effect of the destruction of the demised , premises by the encroachment of the sea, mentioned in Rollé s Abridgment; and the established rule for the abatement or apportionment of the rent should be applied in the former as well as in the latter case. The same reason exists for its application in both cases.”
Now with all due respect I must be permitted to express the opinion that the learned judge did not correctly state the common law as applied to leases with covenant to pay the rent. It had been correctly stated by Emott, J., in the supreme court, and was correctly stated by Weight, J., in his dissenting opinion in the court of appeals.
Nor do I understand that the law is laid down in Rollés Abridgment to be as the learned judge states it. For at the end of the sentence quoted by him are, “ Contra, 35 Hen. VIII., Dyer, 56.” In the report of Paradinev. Jane, both in Aleyn, and in Styles, 47, Rolle, J., is-made to say that rent would not be apportioned by reason of an encroachment of the sea, and to cite Dyer, 56. In Dyer, at 56a, I find Richards le Taverner’s Case, in which the question was mooted, but I do not see that it was decided. I am therefore unable to recognize the analogy drawn by the learned judge.
The leading case of Winton v. Cornish (5 Ohio [Hammond], 477, decided in 1832), was ejectment by lessor against lessee.
The lease was of “the store room and cellar thereunder in the northeast corner of Sycamore and Front-streets, Cincinnati,” for the term of three years. The-building, which was of several stories, was destroyed by fire during the first year ; but the lessee made such repairs by closing in and covering over the space occupied by the store room and cellar, and no more, as to continue his occupation. The court held that the land was not demised by the lease, and that the .lease was terminated. 1
*34 The ground of the decision was that construed according to the intention of the part es, such was the legal import of the lease.
Kerr v. Merchants’ Exchange Co. (3 Edw. Ch., 315), was the case of a lease of certain rooms in a building, which was subsequently destroyed by fire. Vice-Chancellor MoCoue", after citing Wint-on v. Cornish with approbation, said:
“So in the present case, the leases are not to be considered leases of land, but of apartments in the building, ■distinct from the land on which it was erected. Leases ■must be construed according to the intention of the parties, and with reference to the subject-matter, which in this instance were rooms or apartments in the building, designated by certain numbers. I think it follows, that with the destruction of the premises which were demised,—namely, the apartments in the building,—the •lease itself, and the rights and interests under it, terminated.”
Stockwell v. Hunter (11 Metc. [Mass.] 448), was •ejectment. The lease was of “the basement or cellar” of .a brick building three stories in height, which was ■burned down, “ except some portion of the outer walls -which were not suitable to repair so as to make a good ■building.”
The court said, “ The proper construction of such a ■lease as the present, as seems to us, is, that the lessee’s right of oempation of the land is an interest for the .time being, defeasible by the destruction of the building by fire.”
“We see no other practicable rule that can be reasonably applied in cases like this, and where there is no stipulation to rebuild, either on the part of the landlord or tenant, but to hold that the casualty which has destroyed the building, has also left the lessor free to rebuild upon the ruins of the former edifice.”
In Doe v. Burt (1 Term R., 701) Asi-ihtjrst, J., said : “ The only question is, whether the court are absolutely bound by the terms of this lease, to put the con *35 struction on it, for which the defendant contends. Now it seems to me, that the construction of all deeds must be made with a reference to their subject-matter. And it may be necessary to put a different construction on leases made in populous- cities from that on those made in the country.”
The subject of the demise, in the case before us, was an interest in lands. But it was not a demise of the soil, of the land itself. It was a demise of a particular right in the land. It was not intended by the parties as a demise of a certain space of air, but of a certain portion .of a visible and tangible building. “If aman,” says Lord Coke, ‘ ‘ be seized of a river, and by deed do grant several fishery in the same, and maketh the livery of seizin according to the form of the deed, the soil doth not pass, nor the water ; and if the river become dry, he may take the benefit of the soil; for there passed to the grantee but the particular right, and the livery being made according to the form of the deed, cannot enlarge the grant. For the same reason, if a man grant aquam suam, the soil shall not pass, but the piscary within the water passeth” (Co. Litt., 4, b).
When the demise is of rooms parcel of a building, and the building is destroyed, the particular right of the lessee is gone, and the land of the lessor is freed from the burthen of the particular right.
The lessor has his land without incumbrance from nadir to zenith.
When the lease is of lands, and the buildings are destroyed,, or the lands themselves are swept away by the elements, the term of years which the lessor carved out of his estate are not thereby returned to him.
I conclude, then, that the distinction which I have been considering between a demise of lands and a demise of certain apartments in a building is made upon the construction of the leases as affected by their subject-matters.
The considerations suggested satisfy my mind, that it was the intention of the parties, gathered from the lease *36 and its subject-matter, that the lease, and the relations between the parties created by it, should end with the destruction of the building. ■
But it is said that the building was not entirely destroyed, and that the main story could be, and was, occupied. It must be added that the rear room in the second story was entirely destroyed.
This case is within Winton n. Cornish {supra).
In Stockwell v. Hunter {supra) it was said by the court that Winton v. Cornish went very far, perhaps it may be thought too far by some, inasmuch as the lessee had made such repairs as enabled him to occupy the. premises leased to him.
In Izon v. Gorton (5 Bing. N. C., 501; 35 Eng. Com. L., 198), the plaintiff being the lessee of a warehouse in London, for a term of years, occupied the ground floor and cellar himself, and let to the defendants for a term of years all of the building above, consisting of two floors. These floors were consumed by fire, but not the roof. The plaintiff, in the space of seven months, repaired them and tendered the rooms to the defendants, who had necessarily quit them, but they refused to resume the possession of them. The defendants were held liable for the rent subsequent to the fire.
The liability of the defendant, in the case before us, turns upon the construction of the lease, which is to be construed according to the intent of the parties and with reference to the subject-matter. In getting at the intention of the parties, it must be considered that while the lessee has the right to make repairs, he has no right to rebuild ; that the right to rebuild,' when it exists, is the lessor’s.
When the building is destroyed to such an extent that it cannot by repairs be made to answer the purposes for which it was rented, and to which it was applied at the time of the letting, but a rebuilding is rendered necessary, I think the intention of the parties to a lease like the one under consideration, is that the demised term shall end.
*37 I am of the opinion that the injury to the building in the case before us ended the lease. The plaintiff can only recover on the lease the rent reserved in the lease to the time "of the fire. Subsequent to the fire the plaintiff’s remedy is for use and occupation, or upon the special agreement.
There should be a new trial.
New trial ordered.

 The act of 1860 (Laws of 1860, 592, ch. 345), is as follows:
“ The lessees or occupants of any building which shall, without any fault or neglect oil their part, be destroyed, or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors or owners thereof, after such -destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied."